**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMBER HERREN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMSTED INDUSTRIES, INC., d/b/a** | ) | |
| **BURGESS-NORTON MFG. CO, INC.** | ) | **Jury Trial Requested** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

NOW COMES Plaintiff, AMBER HERREN, by and through her counsel, Lisa Kane of Lisa Kane & Associates, and complaining of Defendant, AMSTED INDUSTRIES, INC. d/b/a BURGESS-NORTON MFG. CO, INC., states as follows:

### PRELIMINARY STATEMENT

1.    This is an action seeking redress for the violation of rights guaranteed to Plaintiff by 42 U.S.C. § 1981. Plaintiff seeks mandatory injunctive relief and damages to redress Defendant's unlawful employment practices.

### JURISDICTIONAL STATEMENT

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection of and to redress deprivations of rights secured by 42 U.S.C. § 1981. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### VENUE

3.    Venue is proper under 28 U.S.C. § 1391 (b)(1) and (2).

1

## PARTIES

4.     Plaintiff, AMBER HERREN, (hereinafter "Plaintiff"), is a Caucasian female who resides in Illinois.

5.     Defendant, AMSTED INDUSTRIES, INC., d/b/a BURGESS-NORTON MFG. CO, INC., (hereinafter "Defendant"), is a foreign corporation which has at all times relevant hereto, conducted, and continues to conduct, business in the State of Illinois.  Defendant has continuously, and does now employ more than fifteen (15) employees.  Defendant is engaged in an industry that affects commerce and is an employer for the purposes of 42 U.S.C. § 1981.

## COUNT I
## 42 U.S.C. 1981
## RACIAL HARASSMENT

6.     Paragraphs one (1) through five (5) are incorporated by reference as if fully set out herein.

7.     Plaintiff, who is Caucasian, began her employment with Defendant as a General Laborer/Sorter at Defendant's Burgess-Norton Mfg. Co., Inc. plant, (hereinafter "Burgess-Norton plant"), in June of 2015.

8.     At all times material hereto, Plaintiff performed to Defendant's reasonable satisfaction, as evidenced by her lack of discipline, and any assertion to the contrary is merely pretextual in nature.

9.     During her employment with Defendant, Plaintiff, who is Caucasian, worked from 11 pm to 7 am ("third shift"), approximately 45 to 50 hours per week, at Defendant's Burgess-Norton Mfg. Co, Inc. plant (hereinafter "Burgess-Norton plant").

10.    The only managers on site during the third shift at Defendant's Burgess-Norton plant,

2

Max, Defendant's Head Supervisor, and Romero, Defendant's Manager/Engineer, are Hispanic.

11.     In their supervisory positions, Max, Defendant's Hispanic Head Supervisor, and Romero, Defendant's Hispanic Manager/Engineer, possessed the authority to discipline and terminate Plaintiff's employment with Defendant.

12.     During Plaintiff's employment with Defendant, there were thirty-five (35) employees on the third shift at Defendant's Burgess-Norton plant. The majority of the thirty-five (35) employees on the third shift were Hispanic, and every manager on third shift was Hispanic.

13.     Specifically, thirty (30) of the employees, including the two supervisors at the plant, were Hispanic. Of the thirty-five (35) employees working the third-shift, Plaintiff was the only Caucasian female.

14.     Immediately upon commencing her employment with Defendant, Plaintiff was made aware of the clearly delineated racial divide which permeated the atmosphere at Defendant's Burgess-Norton plant.

15.     The series of altercations which regularly occurred between Defendant's Hispanic employees and Defendant's minority African American employees- and were disregarded by Defendant's Hispanic managers on shift- highlighted the blatant racial tensions among employees working the third shift at Defendant's Burgess-Norton plant.

16.     As the only managers on-site at Defendant's Burgess-Norton plant during the third shift were Hispanic males- Max and Romero- racial and sexual torment ensued against Defendant's non-Hispanic female employees on a daily basis throughout Plaintiff's employment with Defendant.

17.     The demeaning behavior freely exhibited and encouraged by Defendant's Hispanic managers towards Defendant's female employees who were not of Hispanic origin includes, but is

3

not limited to, abusive racial slurs and epithets, rampant unwanted sexual physical touching and sexual solicitations.

18.     The frequent nature of such abhorrent behavior was tolerated and exhibited by Defendant's Hispanic managers in order to foster an environment of Hispanic superiority and control over female employees not of Hispanic origin.

19.     Despite numerous complaints to Defendant's Human Resources and Defendant's upper management, Defendant turned a blind eye to the plight its non-Hispanic female employees were suffering, favoring a bottom line mentality focused on profit.

20.     To the dismay and utter humiliation of the non-Hispanic female employees, Defendant's Hispanic managers, Max and Romero, displayed obvious favoritism over and over again to Hispanic employees.

21.     Further, upon the commencement of Plaintiff's employment with Defendant, Plaintiff was forced to endure a ceaseless course of humiliating and degrading racially tinged sexual harassment from her Hispanic supervisors, Max and Romero. Such demeaning, racially tinged sexual harassment includes, without limitation, the following:

- salacious demands for sexual intercourse and sexual favors;

- smutty sexual remarks, including comments made in Spanish; and

- vulgar gestures simulating sexual intercourse.

22.     Notably, Defendant's Hispanic supervisors, Max and Romero, continuously conveyed to Plaintiff that they were sexually obsessed with her because of Plaintiff's race, Caucasian. Defendant's Hispanic supervisors, Max and Romero, articulated to Plaintiff that they liked her "coloring" and frequently commented on her skin tone.

4

23.     On a daily basis, Defendant's Hispanic supervisors, Max and Romero, made explicit sexual comments, gestures and demands for sexual favors to Plaintiff, their subordinate Caucasian employee.

24.     Plaintiff continuously rebuffed and repelled the offensive, unwelcome sexual advances of her Hispanic supervisors, Max and Romero, to no avail.

25.     In order to further demean and degrade their non-Hispanic female subordinates, Defendant's Hispanic managers, Max and Romero, routinely spoke in Spanish to other employees while suggestively ogling Plaintiff and laughing in a maleficent manner.

26.     Defendant's Hispanic supervisors, Max and Romero, frequently made crude sexual gestures, including simulating sexual intercourse by thrusting and pumping their hips in the direction of Plaintiff.

27.     Max and Romero, Defendant's Hispanic supervisors, subjected Plaintiff to an overt, unbridled, and malicious course of conduct designed to psychologically and emotionally abuse Plaintiff, their Caucasian, female, subordinate employee.

28.     On at least three occasions, Plaintiff complained to Gloria, Defendant's Human Resources representative, of the racially tinted sexual harassment and unwanted vulgar sexual demands she was forced to endure at the hands of her Hispanic supervisors, Max and Romero, to no avail.

29.     When Plaintiff complained to Gloria of the sexual harassment she was suffering, Gloria airily dismissed Plaintiff's concerns.

30.     Thereafter, to Plaintiff's utter horror, the next time Plaintiff complained to Defendant's Human Resources representative, Gloria, of the relentless sexual harassment she was

forced to endure at the hands of Defendant's Hispanic supervisors, Gloria indignantly accused Plaintiff of being a "liar."

31.    Again, Defendant failed to take any action to ameliorate the abusive racially tinged sexual harassment Plaintiff, a Caucasian female, was suffering at the hands of her Hispanic male supervisors.

32.    Defendant's Hispanic Head Supervisor, Max, and Romero, Defendant's Hispanic Engineer/Manager, routinely made demeaning and threatening sexually explicit comments to their non-Hispanic female subordinate employee, Plaintiff, who is Caucasian, including but not limited to, the following:

- "Suck my cock;"

- "When are you going to give me some ass;"

- "I'll give you a raise if you let me fuck you;"

- "Are you ready to give me some head?" referencing oral sex;

- "Are you ready to give me some ass?"

- "Do you want to fuck;"

- "If you fuck, you can stay," implicitly conditioning Plaintiff's continued employment on acquiescence to their supervisor's sexual demands;

- vulgar, threatening requests for "blow jobs;"

- "I'm innocent until proven guilty;"

- "My wife doesn't have to know," referencing having sexual intercourse;

- "As long as I keep up my routine, my wife won't know anything;"

- "As long as I keep up my routine, my wife won't know anything;"

- "I like your coloring," referencing Plaintiff's pale Caucasian skin tone;

- "whetta", derogatorily referring to Plaintiff as a "white girl;"

- "puta blanca," calling Plaintiff a "white whore;" and

- "puta whetta."

33. Throughout the duration of her employment with Defendant, Plaintiff was the only Caucasian female on the third shift. Defendant's Hispanic supervisors, Max and Romero, routinely informed Plaintiff that they were sexually obsessed with her because of her race, Caucasian and her "skin color."

34. Without exception, Defendant's Hispanic supervisor, Max, took advantage of his superior position as Head Supervisor, to demand sexual favors from Plaintiff, his Caucasian subordinate female employee.

35. Examples of the abhorrent, racially tinted sexual harassment Plaintiff was subjected to by Defendant's Hispanic supervisors, Max and Romero, include, but are not limited to:

- a demand to "suck [his] cock" from Defendant's Hispanic Head supervisor, Max;

- daily propositions for "fucking," oral sex and sexual intercourse;

- continuous references to "fucking;"

- "I am invincible and can fuck whoever I want because I've been with the company so long;

- lasciviously licking their lips and staring at Plaintiff while suggestively speaking in Spanish; and

- lewd comments and gestures from Max and Romero.

36. As a result of the relentless sexual demands and advances of Defendant's Hispanic

7

Head Supervisor, Max, which created an abusive environment, Plaintiff suffered severe chest pain during her shift on May 12, 2016. In fact, Plaintiff was unable to breathe and her anxiety-induced chest pain was so severe that she feared she was having a heart attack and requested to go to the hospital.

37.     Accordingly, Max, Defendant's Hispanic Head Supervisor, drove Plaintiff to the hospital.

38.     During the car ride to the hospital, while Plaintiff was doubled over from chest pain and anxiety, Defendant's Hispanic Head Supervisor, Max, aggressively ordered Plaintiff to "suck my cock!"

39.     Plaintiff vehemently refused and rebuffed the vulgar demands of her Hispanic supervisor, Max, to no avail. Upon hearing Plaintiff's refusal to acquiesce to his degrading demands for sexual favors, Max, Defendant's Hispanic Head Supervisor, threatened Plaintiff's job with Defendant, while Plaintiff suffered from agonizing and debilitating chest pain.

40.     Immediately following her return to work after her panic attack, Plaintiff complained of the racially tinged sexual harassment she was experiencing to Defendant's Human Resources representative, Gloria.

41.     Specifically, Plaintiff stated to Gloria, Defendant's Human Resource representative, that Defendant's Hispanic Head Supervisor, Max, demanded that she "suck his cock" in his car while he was driving Plaintiff to the hospital for the panic attack she suffered during her shift.

42.     Plaintiff further explained to Defendant's Human Resources representative that she was in fear for her job and that Max, Defendant's Head Supervisor, would punish Plaintiff for her refusal to submit to his demeaning, racially tinted sexual demands.

43.     To Plaintiff's complete dismay, Defendant's Human Resources representative, Gloria, balefully called Plaintiff a liar, accusing Plaintiff of "making it up" and stating that "it didn't happen."

44.     Defendant failed to take any ameliorative action in response to Plaintiff's complaints of the sexual harassment to which Defendant's Hispanic Head Supervisor, Max, was subjecting Plaintiff to on a daily basis.

45.     Consequently, at the end of May 2016, Max, Defendant's Hispanic supervisor, increased his demands for sexual favors from Plaintiff, aggressively stating, "are we gonna do this, or what?" referencing sexual intercourse. Plaintiff again adamantly refused and rebuffed her supervisor's demeaning demand for sex, firmly stating, "No!"

46.     The very next day, less than two weeks after refusing Max's order to "suck [his] cock," Plaintiff's employment with Defendant was terminated, at the recommendation of Max, the very Hispanic Head Supervisor who demanded sexual favors from Plaintiff.

47.     Notably, Defendant's Human Resources representative, Gloria, announced that Plaintiff was being terminated at Max's recommendation, and that Defendant's Hispanic Head Supervisor, Max, falsely accused Plaintiff of "sleeping on the job."

48.     Incredulous, Plaintiff explained that Gloria, Defendant's Human Resources representative, was aware of the sexual demands Max, Defendant's Hispanic Head supervisor had made of Plaintiff, his subordinate employee.

49.     Further, Plaintiff articulated that she was being terminated because she refused to acquiesce to the vulgar demands for sex made to her by Max, Defendant's Hispanic Head Supervisor, to no avail.

9

50.    Plaintiff expressed to Gloria, Defendant's Human Resources representative, that, within a day of Plaintiff's final refusal to capitulate to the offensive sexual demands of her Hispanic Supervisor, Max, he recommended Plaintiff's termination.

51.    Despite Plaintiff's continuous pleas to Defendant's Human Resources representative, Gloria, for aid in ameliorating the abhorrent sexual harassment Plaintiff suffered at the hands of her Hispanic supervisors, Defendant failed to take any action.

52.    Consequently, feeling as though he were invincible, Max, Defendant's Hispanic Head Supervisor, recommended the unwarranted termination of Plaintiff's employment with Defendant.

53.    To Plaintiff's complete dismay, Plaintiff was terminated at the recommendation of Max, the very Hispanic Supervisor who demanded explicit sexual favors of Plaintiff based on her race, Caucasian.

54.    Notably, Plaintiff's blatant rejection of the vulgar advances and sexual demands of Defendant's Hispanic Head Supervisor, Max, was the basis for Defendant's Head Supervisor, Max's, decision to pretextually terminate Plaintiff's employment with Defendant.

55.    Defendant's Hispanic Head Supervisor, Max, subjected Plaintiff, his Caucasian subordinate employee to a rigorous course of *quid pro quo* sexual harassment based on her race, Caucasian. Ultimately, the abhorrent actions of Defendant's Hispanic Head Supervisor, Max, went unchecked by Defendant, which culminated in the unwarranted termination of Plaintiff's employment due to her refusal to acquiesce to her supervisor's degrading sexual demands.

56.    Moreover, Defendant was on notice of its Hispanic managers proclivity for racially tinged sexual harassment, as Lyndsey Ward-Jones, a non-Hispanic female employee made seven (7)

10

complaints to Defendant's Human Resources and upper management of the racially tinged sexual harassment suffered by Defendant's non-Hispanic female employees at the hands of Max and Romero.

57.     Despite continuous complaints of the racially tinged sexual harassment Defendant's non-Hispanic female employees were suffering at the hands of their Hispanic supervisors, Defendant failed to take any remedial action.

58.     As Defendant turned a blind eye to the plight of its non-Hispanic female employees for profit, the abhorrent racially tinged sexual harassment perpetrated by Defendant's Hispanic managers continued unabated throughout the duration of Plaintiff's employment.

59.     The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff on the basis of her race, Caucasian, and have deprived Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of her employment relationship in violation of 42 U.S.C. § 1981.

60.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant Plaintiff has suffered damages, including but not limited to, lost and foregone wages and benefits, and physical and severe emotional harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, AMBER HERREN, prays for judgment against Defendant and respectfully requests that this Honorable Court:

A.     Declare the conduct of Defendant to be a violation of rights guaranteed to Plaintiff pursuant to appropriate federal law;

B.     Grant a permanent injunction restraining Defendant, its officers, successors, assigns,

and all persons in active concert or participation with them, from engaging in any employment practice that unlawfully discriminates on the basis of race;

C.     Order Defendant to make whole AMBER HERREN, by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.     Order Defendant to pay lost, foregone, and future wages to AMBER HERREN;

E.     Grant Plaintiff the consequential, compensatory, punitive and any other damages that this Honorable Court may deem appropriate;

F.     Grant Plaintiff her attorneys' fees, costs, and disbursements; and

G.     Grant Plaintiff such further relief as this Honorable Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

61.     Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this Complaint.

Respectfully submitted,

By: s/ Lisa Kane
Lisa Kane, Attorney for Plaintiff

Lisa Kane & Associates
Attorney for Plaintiff
141 West Jackson Boulevard, Suite 3620
Chicago, Illinois 60604
(312) 606-0383
lisakane@sbcglobal.net
Attorney Code No. 06203093

12

**VERIFICATION**

I, AMBER HERREN, declare under penalty of perjury that the foregoing is true and correct.

Executed on May 17, 2019

AMBER HERREN